UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**WILD TOMATO PIZZA, LLC,**

        Plaintiff,

        v.                                                Case No. 25-CV-527

**WILD MAN, INC.,**
**RED OAK VINEYARD, INC.,**
**and HUNTER ASHLEY PROPERTIES, LLC,**

        Defendants.

## ORDER

Wild Tomato Pizza, LLC filed this trademark infringement suit against Wild Man Inc., Red Oak Vineyard, Inc., and Hunter Ashley Properties, LLC. (ECF No. 1.) Wild Tomato is a restaurant that serves "wood-fired pizzas" in two locations in Door County, Wisconsin. (ECF No. 1 at 2-3.) It opened its first restaurant in 2008 and a second location in 2014. (ECF No. 1 at 2.) Wild Tomato owns multiple federal trademark registrations featuring the word "wild" in connection with restaurants that serve wood-fired pizzas, salads, sandwiches, and burgers. (ECF No. 36 at 1.)

Wild Man appears to be a "pizzeria and grill" also located in Door County, Wisconsin. Wild Tomato alleges that Wild Man's name and logo infringe upon its own trademarks. (ECF No. 1 at 4.) In response, Wild Man asserts a counterclaim for cancellation of Wild Tomato's federally registered trademarks and seeks declaratory

judgment of non-infringement, abandonment, and invalidity. (ECF No. 33.) Before the court now is Wild Tomato's motion to dismiss the cancellation counterclaim for failure to state a claim. (ECF No. 35.)

I. **The Marks at Issue**

A trademark is a designation used to "identify and distinguish" the goods of a person. *See* 15 U.S.C. § 1127; 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:1. Trademark law grants the owner of a mark the right to prevent others from using the mark in a way that is likely to cause confusion. *See Sorensen v. WD–40 Co.,* 792 F.3d 712, 726 (7th Cir.2015) ("The keystone of trademark infringement is likelihood of confusion as to source, affiliation, connection, or sponsorship of goods or services among the relevant class of customers and potential customers.") (internal quotations and citation omitted).

Wild Tomato owns two federal trademark registrations: "Wild Tomato Pizza," which includes a logo (Reg. No. 6,904,344), and "Wild Tomato Wood-Fired Pizza and Grille" (Reg. No. 6,875,572). (ECF No. 1 at 3.) It also allegedly possesses common law trademark rights in "Wild," "Go Wild," "Order Wild," "Wild Tomato," and "a scowl-eyed head with spikey hair," "for use in connection with restaurants featuring wood-fired pizzas, salads, sandwiches, and burgers." (ECF No. 1 at 3.)

Wild Tomato alleges that in February 2025, it became aware of advertisements for a "Wild Man" "grill and pizzeria" whose logo featured a similar "scowl-eyed head with spiky hair." (ECF No. 1 at 3.) In March 2025, Wild Tomato sent cease and desist

letters to the parties it believed were operating the Wild Man restaurant for infringing on its trademarks. (ECF No. 1 at 4.)

II.   **Legal Standard**

A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). *Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At a minimum, the complaint must provide the defendant with fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " (quoting *Twombly*, 550 U.S. at 555)).

In reviewing the pleading, the court accepts all well-pleaded allegations in the counterclaim as true and draws all reasonable inferences in favor of the pleader. *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Dismissal is appropriate only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

### III. Abandonment

Wild Man did not respond to Wild Tomato's motion to dismiss the counterclaim. And although its filings make clear that it seeks cancellation of Wild Tomato's federally registered trademarks, Wild Man twice cited a non-existent statutory provision—15 U.S.C. §1046(3)—as the basis for that relief. (ECF No. 33 at 2; ECF No. 7 at 11.) While the court assumes that the repeated citation error stems from inadvertence rather than an attempt to invoke a fabricated authority, the combination of failing to defend the counterclaim and the citation error reflects a lack of care in advancing the claim. In any event, because the sufficiency of the counterclaim—not the diligence of the parties—is what matters at this stage, the court addresses the merits and construes the attack on the counterclaim as arising under the relevant cancellation provisions, 15 U.S.C. §§ 1064 and 1127.

Wild Man seems to rest their entire cancellation counterclaim on the fact that Wild Tomato has permitted third-party use of similar marks. Wild Man alleges that Wild Tomato has "failed to protect their marks" by allowing the national use of "Wild Tomato," "Wild," and "Wild Pizza" by other third parties (ECF No. 33 at 2); that this third party use with "lack of enforcement" constitutes abandonment (ECF No. 33 at 2); and that the third party use of the specific phrase "Wild Tomato" leads consumers to view Wild Tomato as a generic label. (ECF No. 33 at 2.) Wild Tomato counters that Wild Man's cancellation counterclaim "is based on unsubstantiated legal theory" because Wild Man inappropriately conflates the separate trademark principles of abandonment, dilution, and acquiescence. (ECF No. 36 at 4.)

The Lanham Act permits "any person who believes that he is or will be damaged" by a registered trademark to file "a petition to cancel" at "any time if the registered mark becomes a generic name for the goods or services for which it is registered . . . or has been abandoned" or "at any time in the case of a certification mark on the ground that the registrant does not control, or is not able legitimately to exercise control over, the use of such mark." 15 U.S.C. §1064(3), (5). Although § 1064 applies to trademark cancellation proceedings in the Patent and Trademark office itself, district courts possess the authority to cancel trademark registrations under 15 U.S.C. § 1119. *See Specht v. Google Inc., 747 F.3d 929, 936* (7th Cir. 2014).

Wild Man's counterclaim suffers from inartful drafting, leaving the court to decipher which trademark principle allegedly invalidates Wild Tomato's marks. And Wild Man made no effort to clear up this confusion, as it did not respond to the motion to dismiss. It does appear that Wild Man's counterclaim conflates varying principles of trademark law. However, Wild Man explicitly alleges abandonment, and because 15 U.S.C. § 1064(3) permits cancellation if a registered mark has been abandoned, the court will focus its analysis there.

There are two principal means of abandoning a mark. *See* 15 U.S.C. § 1127. "[B]ecause abandonment 'results in a forfeiture of rights, the courts are reluctant to find an abandonment.' " *Am. Nat'l Ins. Co. v. Am. Nat'l Investment Advisors, LLC*, No. 11-cv-4016, 2014 WL 6613342, at *7 (N.D. Ill. Nov. 21, 2014) (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:12).

One way to constitute abandonment is to discontinue the trademark's "use in commerce" with no intent to resume use. *Specht*, 747 F.3d at 934, citing *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1214 (7th Cir.1997); *see also Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 675 (7th Cir. 1982) ("The statutory definition makes clear, however, that abandonment requires discontinuance of use as well as intent to abandon."). Wild Man does not allege that Wild Tomato has discontinued the use of its trademarks, nor does anything else in the record reflect discontinuance. Instead, Wild Man focuses solely on Wild Tomato's permittance of other businesses using similar marks.

A trademark can also be deemed abandoned when, through the course of conduct of the owner, the mark becomes the generic name for goods and services. 15 U.S.C. § 1127. Wild Man's central claim, alleged a few times in different ways, is that Wild Tomato abandoned their marks by allowing them to become generic. Wild Man alleges that the third-party use of similar marks, unpoliced by Wild Tomato, constitutes abandonment on its face. (ECF No. 33 at 2.) Or, alternatively, that the third-party use "eliminates" consumer perception that Wild Tomato's marks come from a single source of goods, which also constitutes abandonment. (ECF No. 33 at 2.) Wild Man's pleadings suffer from the defects explained below.

Third-party use of similar marks does not automatically establish abandonment. Failure to police a trademark cannot alone give rise to abandonment of a trademark. *Fort James Corp. v. Kimberly-Clark Tissue Co.*, No. 98 C 7834, 1999 WL 966144, at *4 (N.D. Ill. Oct. 8, 1999). Although distinctiveness can be lost by

failing to act against infringers, "an owner is not required to act immediately against every possibly infringing use to avoid a holding of abandonment." *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (C.C.P.A. 1982) ("[A] company may be hard pressed to extend its financial resources to fight an infringer when it has little or no current market under its mark."). Moreover, widespread use of similar designs must result in a *complete* "loss of trade significance" for an abandonment defense to be asserted. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1080 (5th Cir.1997) (emphasis added); *see also Fort James Corp.*, 1999 WL 966144, at *4 ("[S]uch a defense [of abandonment] may be nearly impossible to prove… [o]nly where third-party infringements have caused a mark to lose *all* significance will abandonment result").

Wild Man has fallen short of pleading a plausible claim that Wild Tomato has abandoned its marks by not policing third-party use. Wild Man asserts no allegations that the third-party use has resulted in Wild Tomato's marks losing *all* significance. To the contrary, Wild Man does not even allege that Wild Tomato's marks have lost *any* significance. Instead, Wild Man relies on the sweeping, conclusory allegation that "[t]he use of third parties with the lack of enforcement constitutes abandonment." (ECF No. 33 at 2.) The law says otherwise. *See Exxon Corp.,* 109 F.3d at 1080. And the lack of other facts to support the assertion does not raise the possibility of relief "above a speculative level." *Kubiak*, 810 F.3d at 480. Wild Tomato is not required to act immediately against every possible infringer to stave off a claim of abandonment. *Wallpaper,* 680 F.2d at 766. Even so, the record supports the opposite of Wild Man's

assertion: when confronted with Wild Man's existence and operation, Wild Tomato acted swiftly to police its marks. (ECF No. 1 at 4.)

Wild Man's allegations also fail to plausibly suggest that the third-party use has rendered Wild Tomato's marks generic. "The law is clear that 'a trademark owner's failure to pursue potential infringers does not in and of itself establish that the mark has lost its significance as an indicator of origin.'" *Fort James Corp.*, 1999 WL 966144, at *4, citing *Exxon Corp.,* 109 F.3d at 1080. Once a trademark is registered with the U.S. Patent and Trademark Office, it is entitled to a presumption of validity; that is, a registered trademark is presumed to not be merely descriptive or generic. 15 U.S.C. § 1115(a); *Packman v. Chicago Trib. Co.,* 267 F.3d 628, 638 (7th Cir. 2001). This is a rebuttable presumption; a defendant bears the burden of showing proof that a mark is either generic or merely descriptive and, therefore, not entitled to trademark protection. *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936–37 (7th Cir.1986).

Wild Man does not support the allegation of genericness beyond its own assertion that consumers view Wild Tomato as a "generic label." (ECF No. 33 at 2.) Without alleging facts beyond its conclusory statements, Wild Man has not sufficiently plead that Wild Tomato's marks have become generic through third party use. *See Exxon Corp.*, 109 F.3d at 1080 ("Even were we to construe [Defendant's] pleadings to allege the unlikely proposition that [Plaintiff's] registered marks, due to these third-party phase out agreements, have lost their distinctiveness as indicators of origin, [Defendant] has offered absolutely no evidence to substantiate such a

claim.") Wild Man relies solely on a "formulaic recitation of the elements[.]" *Twombly*, 550 U.S. at 555. It simply parrots the cancellation language found in 15 U.S.C. §1064(3) without providing any additional facts to support its claim.

Wild Man likely meant to supply the court with examples of other restaurants using similar marks, as it did with a supplemental exhibit in its initial answer and counterclaim. (ECF No. 7.) But Wild Man filed an amended answer and counterclaim in August 2025, neither of which included exhibits. It is well-established that an amended complaint supersedes the original complaint. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Facts or admissions from an earlier complaint that are omitted in the later complaint cannot be considered on a motion to dismiss. *Scott,* 725 F.3d at 782. Without any specific examples of similar marks, Wild Man's conclusory allegations fall short. *Compare Garcia v. Global Development Strategies Inc.*, 44 F.Supp.3d 666 (W.D.Tex., 2014) (denying motion to dismiss cancellation counterclaim where defendant stated there were 325 similar third party federal registrations and alleged another dozen businesses use similar marks) *with Slingmax, Inc. v. Marcal Rope & Rigging, Inc.*, 2016 WL 4073675 (E.D.Mo., 2016) (granting motion to dismiss cancellation counterclaim where defendant did not go beyond alleging that plaintiff allowed numerous other competitors to use a similar mark).

IV. Conclusion

Wild Tomato posits that Wild Man could be attempting to allege acquiescence or dilution, and it provides a defense for why those issues are not applicable here. But

the court need not address Wild Tomato's defenses to arguments that Wild Man failed to assert. It is not the court's responsibility to research and construct the parties' arguments for them. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010). If Wild Man intended to allege anything beyond abandonment, the court finds these arguments to be underdeveloped. Without clearer language or specific examples, and absent a response to Wild Tomato's motion to dismiss, the court finds that Wild Man has fallen short of pleading a plausible claim for relief on the claim of abandonment. Because Wild Man fails to plead facts to support its counterclaim, the court will grant Wild Tomato's motion to dismiss the counterclaim.

**IT IS THEREFORE ORDERED** that Wild Tomato's Motion to Dismiss for Failure to State a Claim re: First Counterclaim (ECF No. 35) is **GRANTED.**

Dated at Green Bay, Wisconsin this 5th day of December, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge
